UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEZHEN LIU ALSO KNOWN AS JENNIFER LIU,

Plaintiff,

-against-

ANN MARIE T. SULLIVAN, *Commissioner, New York State Office of Mental Health*,

Defendant.

25-CV-10847 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff filed this *pro se* complaint under 42 U.S.C. § 1983 and the Americans with Disabilities Act, alleging that Defendant violated her constitutional and statutory rights. By order dated July 14, 2026, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action and grants Plaintiff 30 days' leave to replead her claims in an amended complaint.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief and to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

**BACKGROUND**

The following facts are drawn from the complaint, which Plaintiff filed on December 30, 2025, against Ann Marie T. Sullivan, Commissioner of the New York State Office of Mental Health ("OMH").[1] On May 21, 2021, Plaintiff was hospitalized at Gracie Square Hospital ("GSH"), a private hospital, "under the New York State Mental Hygiene Law" ("MHL").[2] (ECF 1 at 3.) On September 16, 2021, Hon. Kelly O'Neill Levy of the New York State Supreme Court,

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

[2] In a separate complaint asserting claims against GSH, Plaintiff states that her hospitalization was voluntary. *Liu v. New York Presbyterian Hosp.*, No. 25-CV-10843 (S.D.N.Y. Sept. 22, 2026) ("*Liu I*") (dismissing complaint with leave to replead).

New York County, issued an order, pursuant to MHL § 9.33, authorizing Plaintiff's hospitalization for 60 days. (*Id.*) Plaintiff was transferred to Creedmoor Psychiatric Center without her consent and "compelled to take multiple high-dose psychiatric medications." (*Id.*) On August 3, 2022, a different state court judge ordered Plaintiff's discharge and participation in "a one-year Assisted Outpatient Treatment ("AOT") program," which involved "compulsory psychiatric medications." (*Id.* at 4.) It appears that Plaintiff was represented by Mental Hygiene Legal Services ("MHLS") during proceedings arising from her hospitalization. (*Id.*)

According to Plaintiff, she "lost her liberty" for ten months, was "subjected to compulsory psychiatric treatment for approximately twenty-two" months, and "never produced for any hearing and never meaningfully participated in any judicial review of her detention." (*Id.*) Plaintiff further alleges that OMH "routinely rel[ies] on § 29.15 transfers and internal practices that permit patients to remain in long-term state custody without meaningful, timely judicial oversight and without effective representation by MHLS." (*Id.* at 4.) She asserts that Commissioner Sullivan "is responsible" for administering and enforcing "statewide policies" and caused Plaintiff to be confined "without constitutionally adequate procedures." (*Id.*)

Plaintiff seeks an order stating that Defendant violated her constitutional rights and her rights under the ADA, specifically mentioning the ADA's "integration mandate." (*Id.*) She further seeks "systemic . . . procedural reforms" and "constitutional safeguards" that would apply to all individuals. Plaintiff also seeks to correct her OMH records, so it "reflect[s] the [alleged] absence of" due process afforded to her.[3] (*Id.* at 5-7.)

---

[3] Plaintiff seeks the same "ADA-compliant and constitutional safeguards" requested in *Liu I.* ECF 1:25-CV-10843, ECF 14 at 5.

## DISCUSSION

### A. OMH Commissioner Sullivan

The Eleventh Amendment bars a plaintiff from asserting an official-capacity claim for damages, under 42 U.S.C. § 1983, against a state official. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents . . . that are, effectively, arms of a state." *Id*. New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Plaintiff's Section 1983 official-capacity claims for damages against Commissioner Sullivan in her role as an arm of New York State, are therefore barred by the Eleventh Amendment and are dismissed.

Under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may sue state officials in their official capacities for prospective injunctive relief to abate an ongoing violation of federal law, without offending sovereign immunity. In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002) (citations omitted); *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (explaining that a plaintiff seeking injunctive relief can sue a state official in her official capacity in federal court where the plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.") (citing *Ex parte Young*)).

Plaintiff does not allege an ongoing violation of her rights under federal law. Instead, her claims arise from alleged past acts. While she does seek prospective relief in the form of systemic procedural reforms, "[p]ast injuries . . . do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that [she is] likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *see also Carovillano v. Sirius XM Radio Inc.*, 715 F.Supp.3d 562, 583 (S.D.N.Y. 2024) (explaining that neither "allegations of possible future injury" nor "past exposure to illegal conduct" is sufficient to clear this bar) (quoting *Nicholas v. Trump*, 433 F. Supp. 3d 581, 587 (S.D.N.Y. 2020). Plaintiff does not allege facts showing that she is likely to be harmed in the future in a similar way. Accordingly, the Court dismisses under the Eleventh Amendment Plaintiff's official-capacity claims against Commissioner Sullivan seeking injunctive relief. 28 U.S.C. § 1915(e)(2)(B)(iii).

Nor does Plaintiff state a Section 1983 claim for damages upon which relief may be granted against Commissioner Sullivan in her personal capacity. To state a Section 1983 claim against an individual defendant, a plaintiff must allege facts showing the defendant's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep' t of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) ("To hold a

state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official . . . .").

Plaintiff alleges that she sues Defendant Sullivan as the official who is responsible for administering and enforcing OMH policies. (ECF 1 at 4.) In the absence of any allegations of Commissioner Sullivan's personal involvement in the alleged violation of Plaintiff's constitutional rights, however, Plaintiff's allegations fail to state a claim under Section 1983. The Court therefore dismisses Plaintiff's claim for damages for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B. Due process claims**

The Court construes Plaintiff's complaint as alleging that she was involuntarily treated and medicated in violation of the Due Process Clause of the Fourteenth Amendment. Involuntary commitment is a "massive curtailment of liberty" that "cannot permissibly be accomplished without due process of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995) (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)). "Substantive due process prohibits states from involuntarily committing nondangerous mentally ill individuals." *Bolmer v. Oliveria*, 594 F.3d 134, 142 (2d Cir. 2010) (citing *O'Connor v. Donaldson*, 442 U.S. 563, 575-76 (1975)). Procedural due process requires a hearing before involuntary civil commitment, and that the substantive requirements for commitment be established by clear and convincing evidence. *Rodriguez*, 72 F.3d at 1061 (citing *Addington v. Texas*, 441 U.S. 418, 423-31 (1979)).

Under New York's statutory scheme, an individual can be subject to civil commitment under Chapter 9 of New York's Mental Hygiene Law. The statute requires a showing, before commitment, that the individual poses a danger to herself or others, and sets forth procedures to ensure that the involuntary commitment is appropriate. *See* N.Y. Mental Hygiene Law § 9. The Second Circuit has held the provisions of the Mental Hygiene Law to be facially constitutional.

*See Project Release v. Provost*, 722 F.2d 960, 971 (2d Cir. 1983). In deciding a due process claim under Section 1983, federal courts must independently assess whether the state's application of these procedures to the plaintiff's case violated a constitutional right. *See Charles W. v. Maul*, 214 F.3d 350, 357 (2d Cir. 2000).[4]

The Due Process Clause also protects an individual's "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Washington v. Harper*, 494 U.S. 210, 221-222 (1990); *Kulak v. City of N.Y.*, 88 F.3d 63, 74 (2d Cir.1996) ("It is a firmly established principle of the common law of New York that every individual of adult years and sound mind has a right to determine what shall be done with his own body and to control the course of his medical treatment." (quotations omitted)). The Second Circuit has held that the New York State statutory scheme governing involuntary medication meets "the minimum facial requirements of due process—both substantive and procedural." *Project Release*, 722 F.2d at 971.

To state a federal due process claim under Section 1983 claim based on forced administration of medication by the public facility, Plaintiff must allege facts showing that she refused the medication before it was administered, *see, e.g., Ambrose v. Dell*, No. 12-CV-6721

---

[4] Plaintiff alleges that the transfer from GSH to Creedmoor violated MHL § 29.15(a), which governs the discharge and conditional release of patients from psychiatric inpatient facilities to the community. *See* MHL § 29.15; *Ernst J. v. Stone*, 452 F.3d 186, 199 (2d Cir. 2006) (discussing the conditional release or discharge of individuals subject to civil commitment); *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 287 (E.D.N.Y. 2008) (explaining that pursuant to Section 29.15(a), "a discharge service plan is prepared" when "an individual with mental illness" who has been "hospitalized, either in a psychiatric hospital or in a psychiatric ward . . . is ready to be discharged to a less restrictive setting"). Plaintiff's transfer from GSH to Creedmoor does not appear to have occurred pursuant to Section 29.15, or to have violated that statute. Even if it did, the violation of state laws or procedures does not give rise to a constitutional claim under Section 1983. *See Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) ("[S]tate statutes do not create federally protected due process entitlements to specific state-mandated procedures.")

(JPO) (DCF), 2016 WL 894456, at *3 (S.D.N.Y. Mar. 8, 2016), and that the medication was administered in violation of New York state law – that is, without court authorization or in the absence of an emergency situation,. *See, e.g., Spencer v. Bellevue Hosp*., No. 11-CV-7149 (CM), 2012 WL 1267886, at *8 (S.D.N.Y. Apr. 12, 2012). Decisions made by professionals are "presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo*, 457 U.S. 307, 323, (1982). "This standard requires more than simple negligence on the part of the doctor but less than deliberate indifference." *Kulak*, 88 F.3d at 75; *see, e.g., Britt v. Buffalo Mun. Hous. Auth*., 827 F. Supp. 2d 198, 208 (W.D.N.Y. 2011).

With respect to Plaintiff's challenge to the term of AOT, courts have held that MHL Section 9.60—the law governing medicating individuals receiving outpatient treatment—satisfies procedural and due process standards. *See Ann v. Wiviott*, No. 21-CV-9210 (LTS), 2021 WL 5450155, at *5 (S.D.N.Y. Nov. 19, 2021) (finding that the one-year AOT, established under Kendra's law, complies with due process); *Coleman v. State Sup. Ct*., 697 F. Supp. 2d 493, 511 (S.D.N.Y. 2010) ("[E]ven if due process requires the involvement of a court before a patient is directed to comply with AOT—which it does not—Section 9.60 plainly comports with that requirement.").

In her complaint, Plaintiff does not set forth facts indicating that she was hospitalized or treated without due process. Rather, she indicates that, during proceedings at which she was represented by counsel, state-court judges ordered her, pursuant to a state-law scheme that has been held to comport with due process, to receive inpatient treatment and then to participate in outpatient treatment. Plaintiff does not plead facts showing that the treatment provided to her

was a substantial departure from accepted professional judgment, practice or standards. Thus, the complaint does not include facts suggesting a violation of due process, and the Court dismisses Plaintiff's due process claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C. ADA**

Plaintiff invokes Title II of the Americans With Disabilities Act ("ADA"). The complaint could also be construed as asserting a claim under the Rehabilitation Act ("RA"). The substantive standard for claims under Title II of the ADA and the RA is similar. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. The RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To state a claim under either of these statutes,

> a plaintiff must demonstrate that (1) [s]he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) [s]he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of h[er] disability.

*McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (quoting *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004)). A plaintiff may state a claim of disability discrimination in the medical treatment context if she "alleges that the defendants made treatment decisions based on factors that are unrelated to, and thus improper to consideration of the services in question." *Landau v. Good Samaritan Hosp., Bon Secours Charity Health Sys. Inc.*, No. 23-CV-7227 (NSR), 2026 WL 880540, at *4 (S.D.N.Y. Mar. 11, 2026) (citing

*McGugan v. Aldana-Bernier*, 752 F.3d 224, 234 (2d Cir. 2014)).

One way a plaintiff may establish a disability discrimination claim is by showing that the public entity violated the ADA's "integration mandate" regulations. *Frank v. Sachem Sch. Dist.,* 84 F. Supp. 3d 172, 185 (E.D.N.Y. 2015), *aff'd*, 633 F. App'x 14 (2d Cir. 2016). "[U]njustified institutional isolation of persons with disabilities is a form of discrimination" that the integration mandate prohibits. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 600 (1999) (holding that Georgia violated the integration mandate by keeping patients institutionalized for several years after medical personnel determined that the patients were eligible for treatment in a less restrictive community-based setting.) The integration mandate directs public entities to "administer services, programs, and activities in the most integrated setting appropriate" to meet the needs of people with disabilities. 28 C.F.R § 35.130(d); *Siino v. City of New York*, No. 14-CV-7217, 2020 WL 1861865, at *8 (E.D.N.Y. Apr. 14, 2020) (finding that the city did not violate the integration mandate by seeking a guardian for the plaintiff on the recommendation of doctors and caseworkers) (quoting *Davis v. Shah*, 821 F.3d 231, 263 (2d Cir. 2016)).

Even if the Court assumes that Plaintiff has a disability as defined by the ADA and RA, her complaint does not state a viable claim for disability discrimination. Plaintiff's allegations do not suggest that anyone discriminated against her or took a particular action against her based on a disability, or that her treatment was based on improper factors or factors unrelated to her disability. With respect to a claim under the integration mandate, Plaintiff does not allege facts suggesting that the treatment was not provided in the most integrated setting possible, or that the treatment she received was inappropriate in some other manner. The Court therefore dismisses Plaintiff's disability discrimination claims, 28 U.S.C. § 1915(e)(2)(B)(ii), but if additional facts exist to support such claims, Plaintiff may replead them in an amended complaint.

**D. Timeliness of Plaintiff's claims**

In the order issued in *Liu I* on September 22, 2026, the Court explained at length that a three-year statute of limitations applies to Plaintiff's claims under Section 1983, the ADA, and the RA. *Liu I*, No. 25-CV-10843, ECF 14 at 6-9. Plaintiff filed this complaint on December 30, 2025, and thus any claims that accrued prior to December 30, 2022, are untimely unless the limitations period has been tolled. *Id.* at 7-9. Plaintiff alleges that she was discharged from Creedmoor on August 3, 2022, and thus, in the absence of tolling, the only claim that would be timely is the claim based on her time in the AOT outpatient program.

Because the failure to file an action within the limitations period is an affirmative defense, Fed. R. Civ. P. 8(c)(1), a plaintiff is generally not required to plead that a claim is timely filed, *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) *Sua sponte* dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011). Generally, a court can dismiss untimely *pro se* claims *sua sponte* so long as the court grants the *pro se* litigant notice and an opportunity to be heard before dismissal. *See Abbas*, 480 F.3d at 640.

If Plaintiff files an amended complaint to address the other deficiencies discussed in this order, she should also allege facts showing why her claims are timely or why the applicable limitations period should be tolled. *See Abbas*, 480 F.3d at 640.

**LEAVE TO AMEND GRANTED**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir.

2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). In light of Plaintiff's *pro se* status, the Court grants her 30 days' leave to file an amended complaint.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action dismissing her claims with prejudice.

**CONCLUSION**

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed, 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii), with 30 days' leave to replead.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated: November 9, 2026
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge